May it please the Court, my name is Kathleen Cannon. I represent the Appellant Cross Appellate Arch Specialty Insurance Company. One of the issues before the Court today is what was the effect of Endorsement 16 to the Arch policy. Endorsement 16 provided that the policy form, a standard ISO CGL form, was amended to provide that supplementary payments erode the limits of insurance. It is Arch's contention that Endorsement 16 created what is known in the industry as an eroding limits, a wasting limits, a burning limits policy, such that defense costs erode the limits of insurance, and when the limits are fully eroded, the duty to defend ends. Amerishur disagrees, and one of the reasons Amerishur disagrees is it says that expenses as used in the supplementary payment provision of the form policy do not include defense costs. Arch, however, says that they unambiguously do, and if the Court will look at the second page of the handout, which is a joint submission from Amerishur and Arch, you'll see that it sets forth the supplementary payment provision, and it provides that Arch will pay with respect to any claim it investigates or settles or any lawsuit it defends all expenses that Arch incurs, and it is Arch's contention that that provision means that Arch will pay all defense expenses that it incurs, and this would include attorney's fees, expert fees, filing fees, transcripts, any of the costs that an insurer typically incurs when it is vigorously defending its insurer. As this Court knows, there's only an ambiguity if there are two reasonable constructions of a disputed phrase. If there's only one, then the Court goes with what the insurer says it means, so in the district court below, we challenged Amerishur to tell us what this phrase— No, there's only one. You go with what the one is. I'm sorry, I didn't hear your question. If there's only one reasonable construction, you go with that reasonable construction— Yes, that is correct. —regardless of who's proffering it. Yes, that is correct. So we said, how do you construct it if you don't construct it the way we do? And the response was that this phrase means the cost that an insurer incurs when it sends an adjuster to a mediation. The problem with that construction is that that is just a very small percentage, typically, of the money or the expenses that an insurer incurs defending its insurance. So that construction would require this Court to read the word all as meaning some. We do not think that it's a reasonable construction, and the district court agreed with us and ruled in our favor. I mean, one of the problems to me is that this typically doesn't come up because you typically don't have an eroding policy by way of endorsement. You typically have your own kind of document that the whole thing was written as an eroding policy. So I don't know that we've had a lot of cases dealing with whether expenses in this context include defense costs, because it wouldn't usually come up. I mean, you'd just be paying your defense and they wouldn't care under what section you're paying them. You're just paying them, right? So they don't care if it's under all expenses or under duty to defend or over here or over there. So now that we are faced with that, what can we look to? You know, you have this concept that you understand a word by what it's related to, and that's kind of their argument about the other six things don't seem to have anything to do with attorney's fees. It's bonds and this and that. But then you have this concept of all expenses. I'm sure if the insured was mean all. I think there's obviously two ways to look at it. Generally under Texas law, the court is supposed to give a word its commonly understood meaning in the context in which it's used. This court has said it doesn't make any difference if a word has 20 meanings in the dictionary if there's only one meaning that would make sense in the context. In addition, Your Honor, I will note that this is a standard ISOCGL form. See, that's why it's weird. We just don't have a lot of law in it. I think it's because we don't typically have an eroding policy done this way. I mean, is that a fair? You're more, you guys are more involved in it. I mean, I used to have my finger on this pulse every day. I don't as much now. Actually, I've seen this done quite a bit with WRAP policies because typically they will start with just the standard CGL policy and the ISO, you know, millions of policies are based on that. And then they will add endorsements to create the specialized coverage No, I get that, but this eroding, I mean, first of all, eroding limits policies in my experience aren't that common. Maybe they are. I haven't seen that many of them in my life as a lawyer and judge, but I don't know. But that said, if it is common, then why don't we have more law construing this? I guess either it's uncommon, which is why we don't have a lot of law, or why don't we have a lot of law? Because this seems fairly basic. Do expenses include defense attorney's fees? Well, I would say that within the industry, the supplementary payments provision is used in an ISO CGL policy is understood to include defense costs. So that is one reason that it's not litigated very often. And I suppose since if you aren't amending the CGL policy form, the expenses are outside the limits anyway, so it's not something that you're typically going to have to fight. So here, though, there's no reason to think that the parties intended for it to have, one, a different meaning than what it would have if you read it in the context of a sentence, and second, a different meaning than it is understood to have in the industry. Okay, let me ask you this. So it says all expenses we incur, and your argument is very straightforward. I'm writing a check. That's an expense. Whether I'm writing it to an attorney or I'm writing it to a travel agent so my adjuster can go to a mediation or whatever. How about the situation, let's say they had hired counsel because you all had refused to defend, they meaning, let's say, the insurer, because I know we've got an excess carrier, but let's talk about the insurer. The insurer goes out and hires counsel, and you all refuse to defend. Then you come in later and change your mind and defend. What would you characterize those expenses, those dollars spent on the attorney before you all assumed the duty to defend? Well, if we felt that we had made the wrong payment, I mean, the wrong decision on coverage, we would obviously pay those attorneys' fees, all the expenses that they had incurred. Now, whether or not we sit there and say, oh, yeah, these are supplementary payments. That's the question. So let's say you do. You say, okay, we screwed up. We should have paid for an attorney. We'll now pay Mr. X and replace him with our guy, and that was $10,000. Are you going to now erode the policy for that $10,000, or is that some different animal? Well, the $10,000 would be treated however supplementary payments are treated in the policy. If they're outside the— You would treat it as a—even though it's something you didn't incur. Oh, yeah. Well, but we would incur it because we'd be paying it back. We would not—if we made a mistake in coverage, we denied a defense, and then we realized for whatever reason—maybe there was a change in the law, or we just didn't have a very good adjuster looking at it, or whatever. Once we came in, we would pay that attorney for his— No, I'm talking about the insured pay. We would reimburse the insured for the cost. So you would consider that an expense we incur? Yes. So what is not an expense we incur? I mean, frankly, settling the lawsuits is an expense you incur. I mean, every check you write is an expense you incur. Well, it says that with respect to any lawsuit we settle, we will pay all expenses we incur. So that would also be an expense we incur. Everything's a supplementary payment, so what's it supplementary to? Everything is not—the supplementary—there's damages and supplementary payments under the name of damages or damages, which would be the settlement and the judgment and would rise under the insurer's duty to indemnify. These other supplementary payments are generally considered to be part of the defense when they're investigating a claim or they're defending a lawsuit. Those are the supplementary payments. Now, aren't you arguing yourself right into their trap, which is that there's a distinction between cost of defense and indemnity payments? No, there is a difference between cost of defense and indemnity payments, but in this case, based on Endorsement 16, both erode the policy limits. Except for the fact that their contention is that there's that other provision that says this doesn't affect the other coverages, right? The Fifth Circuit has previously held that that is just a throwaway provision. It does not mean that it does not affect the coverage that conflicts with the endorsement. In this phrase, here the Texas Rules of Contract Construction would apply that when an endorsement conflicts with a provision in the policy, a court should first attempt to harmonize the endorsement and the policy provision in the context of the coverage that is provided. If they cannot be harmonized, then the endorsement supersedes the policy. What's your case for that? Yes, I have many cases for that. There are . . . Krimrose?  Krimrose? Krimrose is one, yes. I mean, it's just black-letter law, and there are a variety of cases cited in my brief on that issue. Is it your contention here that these provisions are conflicting, that the endorsement has to supersede, or can . . . the district court evidently thought it could harmonize? The flaw in the district court's analysis is the district court thought they could be harmonized if one considered that the purpose of Endorsement 16 was to provide different methods of exhausting the duty to defend and the duty to indemnify. The flaw in its analysis is it has to be harmonized in the context of the entire policy. Here, the policy had a single limit of liability of $2 million. Therefore, under the terms of the policy, they cannot be harmonized because the single limit of liability can only be exhausted once. Let me ask you something different because it has to do with their argument about whether it was even exhausted by these other payments. Everybody seems to be talking about this cause of action for wrongful exhaustion, and I'm just not familiar with it, and the cases that were cited didn't espouse such a cause of action, so I . . . again, I realize that my days of living and breathing insurance every moment are behind me, certainly not present, but that said, I think I would have heard about it, and where does this cause of action for wrongful exhaustion by an excess against a primary come from? I don't actually think that there could be a cause of action. I know Wyoming has a cause of action like that. I don't actually think there could be a cause of action under Texas law unless the insurer had somehow wrongfully exhausted maybe to escape . . . No, I'm just saying where is this case? I mean, where did this concept come from? What case . . . because that Texarkana case isn't about that. I mean, that isn't what that's . . . that to me kind of goes to a different point. My question is what case . . . typically in Texas insurance law, the Supreme Court finally gets something that everybody's been arguing about, and they announce something, and then everybody runs out and starts filing those somethings. So where was that? Well, the reason it's referred to as wrongful exhaustion is because AmeriShare's contention was we had to put this $1.1 million back on our policy limits. The only way we would have to do that under Texas law is if we had done something wrong. Okay, and what case defines that wrong? You've got this reasonable belief argument. They say that isn't enough. They cite this Texarkana case, which isn't about that. I'm just . . . I'm trying to get my arms around what . . . The Texas Supreme Court has said that an insurer who did not breach its contract cannot be in Texas, no cause of action for wrongful exhaustion. However, in order for them to be able to compel us to pay in excess of our limits, we would have to have done something wrong. Well, let me ask you this. Is there any contention that the insured didn't owe this amount? I understand whether it's covered by insurances in question, but these other . . . Oh, no, there's no doubt. So the insured was benefited by these payments and wanted these payments. Oh, definitely, the two different insureds. Since the excess has to stand in the shoes of the insured, how can the . . . the insured can't come in and say, we demanded that you come in and defend and indemnify, and now we're going to come back and fault you for that. And if the insured can't do it, can the excess . . . There are different insureds here. We paid for insured A and insured B. Amerishare insured is insured C. And so, therefore, we exhausted the policy paying these claims against insured A and insured B. Those were definitely bonafide claims. They were definitely bonafide insureds. We had plenty of . . . So they're saying insured C is going to come in and try to overrule Soriano or something. Yes. That's why I'm also sitting co- from this court, that the . . . and that is our contention that they cannot attack our payments for . . . reasonable payments for another insured. Okay. I could spend an afternoon on this. So you claim that you just kind of ignore the part of the policy that talks about the duty to defend it that is limited to settlements and judgments? Well, we didn't ignore it, Your Honor. Our contention is that the endorsement conflicts with the CGL-ISO form policy, and therefore, if they cannot be harmonized, then it is simply black-letter law that the endorsement supersedes the policy provision in the printed form. Here they cannot be harmonized because there is only one limit, $2 million limit. And so if it is exhausted, it could only be exhausted once. And on that point, you have time for rebuttal. Thank you very much, Your Honor. Mr. Shuhart. May it please the Court. I am Fred Shuhart, and together with Diana Faust, we represent the Appellee Cross-Appellant AmeriShure Mutual Insurance Company. I mean, is AmeriShure sure it wants to create a cause of action for wrongful exhaustion? Because it is going to have to live with the consequences of you can really never settle anything because you can always be questioned whether it was even covered. One, I would respectfully disagree with the characterization of creating a cause of action for wrongful exhaustion. Okay. AmeriShure has no problem . . . Y'all keep calling it wrongful exhaustion. I mean . . . Your Honor, that was completely arch's position. Okay. What is your theory of what this is that you're claiming about this? What would you call it? Requiring the insurance company to comply with the terms and conditions of the policy . . . Okay. And if . . . I know you've been doing insurance law a long time. Everybody doesn't always agree on what that is. Everybody doesn't always agree on coverage, in my experience. In fact, they seldom do, at least when they hired me. And so, when the insurance company finally settled that the insured demands that, yes, this is covered, blah, blah, blah, finally settles that, your argument would be someone else can come in and unsettle that. And that strikes me as a huge problem, whatever you want to call it. So, is your best case for that the Texarkana one that just says, it won race judicata over here because of this or that? Your Honor, we're not saying that you can't settle it. It's just a proper allocation of the settlement under the policy of insurance. Well, okay. I mean, insurance companies don't typically want to settle stuff just to be nice. And so, yes, I think they would like credit for it against their policy limits. So, your argument is all that's out the window because anybody . . . I will tell you this, anyone can claim something is or isn't covered by insurance. There is no question about that. You can always make an argument that something is or isn't covered by insurance. And Texas is a vast breeding ground for those arguments. And that's fine. Lawyers are entitled to do that. But now you're basically going to completely upend the concept of policy limits, it seems to me, with this, whatever you want to call it, the wrongful exhaustion something. Again, your Honor, I respectfully disagree with that. The policy behind it is that the insurance companies should pay in accordance with the terms and conditions of the policy of insurance. If an insured, and we're not talking about everybody, we're talking about actual insureds under the policies, cannot come back and question what the insurance company does, then the insurance company can make payments for things that aren't covered. And then when something is covered, which the insured wanted covered, there is no money there for it. Did you ever represent an insurance company that was, I mean, to put her question another way, going out and paying people for things that weren't covered? Your Honor, yes, I have. I have been involved in a lot of construction defect litigation, and certainly in the minds of the insurance company, every payment and settlement they make in a construction defect probably wasn't covered. But they didn't want to incur the defense cost. And they do what? They take that out of the, first of all, they benefit the insured. The insureds were, I realize I may be more than one insured, I get that. But if you want to avoid that, go get your own insurance. So if you're going to have several insureds, then the fact is the insured benefited from that. They didn't go settle a claim that the insured was saying, no, no, no, I'm not liable, don't settle this, don't settle this, right? That is correct. Okay. So the insured said, I'm liable, you owe this, go make it right, and they did. And now they're going to be challenged, not even by an insured, but by an ex-carrier for that insured. They can never close the books on anything doing that. I mean, to me, I find this very big. I mean, I find this a case that should have 50 amici in it if we're really going to go your way, if you're really serious about your approach. I would respectfully disagree with that. I think that that's that big of an issue. Yes, that is a potential issue with it. But if the insurance company wanted to, they enter into an agreement with the insured saying, we'll settle this claim, but we want to argue about coverage. Texas Supreme Court on two occasions has told insurance companies if they pay for uncovered claims, they can't get their money back. Talk about a potential quell of settlements. But that didn't do that. There are ways to get around that potential issue, one of which the insurance company and the insured can agree. Okay, but you're saying these – You're not, but you're a third party. Right. Your Honor, I'm really not. I am actually, I mean, we step in the shoes of the insured. But you're a third party as to that, because that's Admiral and they had these other people. I can't remember all the names of everybody. Your Honor, Admiral was also a defendant in the other two claims. Okay, but the argument you're making is that you wouldn't be bound anyway, because the other insureds aren't – the people that they paid on behalf of are not saying you paid as a volunteer, which is really your argument. You paid as a volunteer. They're not making that argument. Somebody else is making that argument who is part of this group of insureds, but not the insured that benefited. And this is going to happen always. And so to me, it is a huge deal. Whether it's solvable in some way, I don't know, but it is a huge deal, and you're not really presenting it as that. And frankly, you haven't really presented any case law to support it. That's my concern, is I don't really like the Fifth Circuit being the breeding ground for new theories of Texas insurance law. Your Honor, you are absolutely correct. There is no case law directly on point. The closest, though, is the Fifth Circuit decisions. They're in a little bit of a different context where the excess carrier, a stranger to the settlement, comes in and says, oh, this settlement wasn't covered. And as a result of that, underlying carrier, you haven't exhausted your policy limits, therefore we have no coverage. And this court agreed with the excess carrier. Maritime cases, right? I do not believe that the ‑‑ I thought they were maritime. It was a Service Corp versus Great American case. And the excess carrier took the position, hey, look, our policy is not triggered because the insurance company did not properly exhaust the underlying limits, that they paid a $25 million settlement. And in effect, what the excess carrier argued was, well, it was over in multiple policy periods, and therefore only 15 of it really went to the policy period that we're over, and therefore ‑‑ That is a different argument that's being made here. I don't really see ‑‑ Yeah, I do, because you're saying they don't get credit at all for these payments, not they don't get credit against this policy or that, they were this different years, we're suing under the 1983 policy, this was a 1979 settlement, blah, blah, blah. You're saying they don't get credit at all. They paid as a volunteer. They paid a gift to these other insurers. That's your argument. In essence, that's correct. Okay. And that to me is huge, if you can come in and make that kind of contention after the fact, on facts like this, where there's at least a debatable argument. And I don't think a case ‑‑ did you have a case on that? Your Honor, once again, I wholeheartedly agree that unfortunately ‑‑ Okay. Let me ask you ‑‑ We don't have a case. Let's for the moment assume, just for arguendo, that all of their payments were for covered claims and all of that, so that you don't have that argument. And let's also assume that defense costs are expenses. I know those are two things you can test. I'll grant you that. Okay. Now, it seems to me your third argument, which is that this doesn't erode the policy because duty to defend, duty to indemnify are two different things and so on, and it can only be payments of settlements or judgments. How will it ever be eroded? Because if they have already reached policy limits by way of the, quote, expenses to find their way and the payments that they've made, they aren't going to be paying anymore. I mean, under that theory and the district court so found, there is no indemnity owed anymore. So they are never going to pay any more settlements or judgments because that limit has been reached, the indemnity limit. So how will they ever erode the defense limit? Under our construction of the endorsement, they have to pay the $2 million in judgment and settlement. So if they had paid $2 million in settlement for the toilet and the sprinkler claim, then they would have eroded it pursuant to their own policy and they wouldn't have a defense. Right. So what you've done is read the eroding out because you're saying the defense costs don't erode it. You're right. Because then going forward, they have to keep paying defense costs unless they pay more indemnity that they already don't owe because they've already reached their limits of indemnity as the district court found. I mean, to me, it is a completely illogical proposition because you will never erode the limits if you've already reached your indemnity. By definition, you shouldn't be paying any more settlements and judgments. Your other policyholders should say, oh, yeah, you can't do that. Your Honor, under your scenario, You're advocating different policy limits on duty to defend and duty to indemnify? Absolutely. Under the standard policy, you have no limit on the duty to defend, yet you have whatever the policy is. But you contracted, but the insured contracted for precisely that limit in return for which they got lower premiums. That may have potentially been the intent of ARCH. There's absolutely no evidence of what the intent of the insureds are. Well, excuse me, but the policy speaks for itself. The flaw that I saw, I mean, the particular flaw I saw in the district court was that he didn't discuss this. He said he could, quote, harmonize these provisions, but he didn't even cite the Primrose case. Your Honor, I think Primrose, although the decision was obviously against the insurance company in that case, is absolute groundwork and framework for this court holding the district court with respect to its conclusion on the duty to defend. ARCH stood up here and said to you, This is what it's supposed to mean. ARCH never said, This is what it says. And that is the inherent problem with ARCH's argument, is that they've come to this court and came to the district court and said, We wrote a really bad policy. Please rewrite it. Do what it is supposed to do. I have no doubt in my mind that if that endorsement had been written properly, we wouldn't be here. Well, the endorsement says, All limits of insurance are reduced by the payment of those amounts set forth within supplementary payments coverages A and B. That is correct, Your Honor. Now, if you go to the language of the policy under limits of insurance, it says the limits is to pay damages. Settlements and judgments, more precisely. But the point is, it says all limits, and this is the endorsement, and as I understand it, the endorsement controls over conflicting policy language. Only if they're conflicting. Well, they are conflicting to me. I would respectfully disagree. In fact, ARCH wrote the endorsement so it didn't conflict. What? ARCH wrote the endorsement so it didn't conflict. The last sentence of that endorsement said, All other policy conditions remain unchanged. Contrary to the assertion of counsel for ARCH here today, the Fifth Circuit decision doesn't deal with that language. It says all provisions still apply. I want to make sense of the district court opinion, though. The district court says the duty to indemnify limit has been reached. Assuming that it was correct on the attorney's visa. No, I'm not assuming anything. I'm telling you what the district court opinion says. I'm not saying it's correct or incorrect. The district court opinion says duty to indemnify limit has been reached. Therefore, my question to you is, accepting that statement, how will there ever be an end to the duty to defend? Because if the indemnity limit has been reached, there are not going to be any more settlements and judgments. And you're saying that's the only way you can erode the duty to defend, is by settlements and judgments. So that is a circular argument. Your argument is there will never be an end to the duty to defend under this policy. Unless they settle, pay additional settlement and judgment. Right. Which means that this erosion idea of the duty to indemnify goes out the window. It's just written out because it didn't help them at all to make these other payments because they don't erode the limit. Because the only way they can ever be finished with this policy, close the book on this policy, is if they pay $2 million in indemnity. And therefore, it's not an eroding policy anymore under your argument. It looks substantially less and less like an eroding policy. But, again, that's the endorsement they drafted. And they have to live with it. So what was the meaning of that endorsement? What meaning would you give it if now you're the harmonizer? You get to be a district judge for two seconds without even having to go in front of the Senate. What effect would you give to that endorsement? What meaning can we find in it, given what we've just discussed? The endorsement was poorly written. And as a result of that, the only thing that it does is it limits that it counts certain expenses, supplementary payments, towards its $2 million indemnity limit. And that's the only thing it does. Now, whether that's what Arch wanted to do. So duty to defend is unlimited, really? Correct, Your Honor. That's your point. Correct. As this Court noted in Primrose, and as I said, that was a decision, obviously, against the insurance company. But in that case, there were two separate endorsements. There was the saline substance endorsement and the pollution endorsement. The pollution endorsement had two conditions on it. It had to be discovered within the next number of periods of time it had to be reported. The saline endorsement didn't. Yet the insurance company argued on appeal in front of the Fifth Circuit, the saline endorsement is subject to the pollution conditions. And this Court said, it's important to note that NACO wrote the policies. If it had wanted to, NACO could have drafted the endorsements in a manner so as to make the saline endorsement subject to the conditions found in the pollution endorsement. By not doing so, NACO cannot now read such condition proceeding into the policies. And that is exactly what Arch is asking this Court to do today. In the best of all worlds, from Arch's perspective, I think I understood what they were trying to do, but that doesn't count. The question is under Hornbook law, contract interpretation, not what did Arch want the policy to do, but what did it do? And they drafted a really poor endorsement. They cited the Westlake case to the trial court. Westlake took care of this one. Really, you're saying we should strike the endorsement for the policy because it's so poorly written, it really doesn't have any effect, and all it does is confuse everyone. I mean, that's really kind of your argument. I would not go that far, but if that was the Court's decision, I certainly would. Well, because you basically conceded that it doesn't have any meaning because it doesn't cut off anything. It only doesn't cut off the duty to defend. We acknowledge that it does bring down the indemnity obligation, because now prejudgment interest counts. In perpetuity, they're defending cases they will never owe any indemnity on. If they only pay $2 million, that is correct. Well, prejudgment interest is precisely included in supplementary payments. Correct, and I wholeheartedly agree with their proposition that if they paid $1.9 million in settlements and had another $1.8 million in settlements and they had a judgment for $1.5 million and there was $600,000 in prejudgment, and I hope my math worked out right, then they would only be obligated to pay $500,000 of that prejudgment interest because their $2 million limit would be eroded by the payment of the other $500,000 prejudgment, which is not required by the policy otherwise. So we acknowledge that. Again, I go back to what does the policy say? And, Justice Haynes, you hit on it. There is no reason if expenses means attorney's fees in the first part of the definition of supplementary payment, there is no reason to have the rest of the categories because everything in their prejudgment interest can be considered an expense they pay. Well, but then so should the indemnity. I wholeheartedly agree with you, and that's why. That's simply not right because these are all very explicit. It's all expenses we, being the insurer, incurs, but the others are things that either the insurer or the insured may incur, such as the cost of bail bonds, the cost of bonds to release attachments, reasonable expenses incurred by the insured to assist in the investigation of the claim. I mean, that's just wrong. I would respectfully disagree with that. If taken as broadly as they would like to take it, everything is an expense. It's all expenses we, the insurer, incurs, and if it defends, they only normally incur the legal defense costs. And, Your Honor, we would submit that is an obligation they already have in the policy and, therefore, by definition cannot be supplementary. Another decision cited by Arch in this case, the Aerojet decision, specifically points out that the duty to defend is hollow if it doesn't mean paying for it. They've never disputed the fact that Coverage A, Section 1, requires them to provide a defense. Now, why is pre-litigation and post-litigation different? Policy says it is. Policy says they may investigate. They don't have to investigate something pre-litigation. If that's true, then I think, unless I'm completely balled up, which is possible, then Endorsement 16 is even stronger because the duty to defend is automatically included in the coverage. That's correct, but not subject to any limit because it's the term of guard and the limit of insurance is damages. Well, but then what's implicit in the coverage is conflicting with what you say is about the duty to defend in the back, so I believe. I do not believe that the endorsement addresses the duty to defend, and I think that's . . . I know that you don't. And I think that's where the issue is. And like I said, they could have. The Westlake case, which was cited by Arch, had this situation, and Justice Haynes was absolutely correct. Normally, eroding policies are by themselves, and they start off eroding. Very rarely do you get a standard policy that has an endorsement. The Westlake case had an endorsement, and it had identical provisions. It had provision number one, supplementary payments reduce the policy limits. It had provision number two. The limits of insurance include payment of supplementary payments. That's exactly what Arch has. It didn't have the third provision Arch has. No other things . . . everything else remains unchanged. It had a third provision that said our duty to defend ends with the payments of the limits as described above. It was clear. It was unambiguous. Arch could have done that. And again, what Arch's intent is is really not the issue. What does the policy say? Could they have drafted it better? Absolutely. But they're asking this court to draft it better now, and this court should not and cannot take up that offer. Accordingly, and Marissa respectfully requests that this court affirm the lower court's decision with respect to a continuing duty to defend, and reverse and render and declare that the policy of insurance has not been exhausted. Thank you. Your Honors, we are not asking you to rewrite the policy. We are asking you to apply the Texas rules of contract construction and determine the objective intent of the party based on the rules of contract construction, which are to give words their ordinary meaning, attempt to harmonize . . . Because, as you said, this is a standard policy. And unless and until the Texas Supreme Court speaks to this, every seminar from now on is going to talk about how we defined expenses. And, I mean, that is irrelevant to the particular case. I get that. But it matters that we understand the context in which we write. And this is not a term that just two people made up one day and what did they mean and whatever. As you say, it's in a standard form policy. It has effect. And so I'm interested in what it means, no more, no less. And any time I pay anything, I can say it's an expense to me, but it also could be called something else. And that's the problem, is it's a little bit circular either way, either side's argument. Apply the rules of contract construction and find what it means reasonably as it is used. In addition, this is used many times, and I believe in my brief I have a whole page of legal citations that show within the industry this supplementary payment provision, this identical supplementary payment provision is understood to include defense costs. So you will not be writing, creating any new law if you say supplementary payments include defense costs. But then how can it be supplementary? I mean, that's his argument is, look, you already over here owe what we are responsible for paying for bodily injury or whatever covered by the policy and a defense. You already owe that up here. So why does this suddenly become supplementary if you already owe it? Well, if you use it in the traditional meaning of supplementary, it is not the same thing as supplemental. Supplementary costs are within economics the entire cost of an undertaking. In addition, I cited you to the Oxford Online Dictionary that says supplementary means completing or complete. And if you think about this, what they're saying, first of all, we'll pay all expenses we incur, and then they're saying we're going to pay these additional things. We're going to treat bail bonds as a defense cost. We're going to treat if you go out and you lose money because you have somebody from your employee testifying, we'll treat that as a defense cost if we ask that person to testify. So I think when you understand the traditional meaning of supplementary as opposed to supplemental, you will see that it means completing, it means total, all cost, and it's an economic term. So you're saying supplementary to indemnity. Yeah, well, it's a supplementary. I say it's supplementary. It's the total cost of the defense. They're explaining what when they promise to pay the expense of defense, what are they considering to be defense costs. First thing they're considering to be defense costs are all expenses they incur. They will also consider defense costs to be the cost of the insured, if it's a corporate insured, sending its employee to give his deposition if they've requested him. Well, I think their definition of expenses has got a problem, too. I mean, I think both sides have a bit of a problem with this. And so I'm not sure we have two reasonable interpretations. We may have two unreasonable. I don't know. Well, if you — I don't know what you do then. Well, if you look at all the industry literature that I cited — Okay. Then you punt and say, well, just do what the industry says. You know, you can have the duty to defend fulfilled without being in court, which is to say that you reject coverage of the third party's claim and say you haven't proved it up or you reject coverage for other, you know, it's untimely or whatever. You have defended against a claim, but you have not gone to court. And that's why that goes into supplementary payments. I'm not sure about that. They're saying you have Section 1 coverages, coverage A, bodily injury and property damage, insuring agreement, sub A. We will pay those sums, damages or insurance. Two, a right and duty to defend and when we have used up the applicable limit. In other words, you can defend as an insurance company and you could pay up to the policy limit of $2 million without ever going into court. Yeah, that's true. So that's why supplementary payments coverages A and B talk about A, all expenses we incur. It's a friendly question. Never mind. Well, also, I know I understand what you're saying, and it's actually they make your point even clearer because they say with respect to any claim we investigate, we'll pay any expenses we incur. Sometimes an insurance company will get a claim. They'll say, oh, gee, this is really terrible. We better get it settled right now, and there's never even a lawsuit filed. But they'll still go ahead and settle the lawsuit. So, yes, your point is well taken. That's true. Thank you. Thank you. Oh, my God.